**Curtis PORTER, Appellant,**

v.

**C.A. DAWSON & COMPANY, Appellee.**

No. 82–1586.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1983.

Decided March 30, 1983.

C.H. Parsons, Jr., Parsons, Mitchell & Wilson, P.C., Dexter, Mo., for appellant, Curtis Porter.

Roberts & Heneghan, Inc., W. Munro Roberts, Jr., St. Louis, Mo., for appellee, C.A. Dawson and Co.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

1. The Honorable Roy W. Harper, United States Senior District Judge, Eastern and Western Districts of Missouri.

2. The function of this punch press is to shape metals. It operates by lowering one-half of a die attached to a ram against the bottom stationary die half, thereby shaping a piece of

HENLEY, Senior Circuit Judge.

Plaintiff Curtis Porter appeals the judgment of the district court[1] for defendant C.A. Dawson & Company in this diversity action based on strict liability in tort. We affirm.

Porter was injured on April 2, 1981 when the Bliss punch press which he was operating in the course of his employment double-cycled, resulting in the partial amputation of his left hand.[2] This action was filed on September 10, 1981 against defendant, from whom plaintiff's employer, Steward Steel, had purchased the press in the fall of 1975. The original complaint alleged both negligence and strict liability; however, the negligence count was voluntarily dismissed with prejudice at the close of all the evidence. The jury returned a verdict in favor of defendant. Plaintiff's motion for new trial was denied and judgment was entered on March 31, 1982.

The sole issue raised by plaintiff on this appeal is whether the trial court erred in refusing to give plaintiff's requested Instruction 5, or, in the alternative, Instruction 6.

The court instructed the jury, in pertinent part, as follows:

### INSTRUCTION 1

Your verdict must be for plaintiff Curtis Porter if you believe:

First, defendant sold the sixty-ton Bliss Punch Press in the course of defendant's business, and

Second, the sixty-ton Bliss Punch Press was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Third, the sixty-ton Bliss Punch Press was used in a manner reasonably anticipated, and

metal inserted between the two halves. Normally, the press completes only one cycle when triggered by the operator. In the present case, however, it is undisputed that the press unexpectedly malfunctioned by cycling a second time while Porter was reaching in to remove the piece just completed.

Fourth, plaintiff was damaged as a direct result of such defective condition as existed when the sixty-ton Bliss Punch Press was sold.[3]

Plaintiff's Requested Instructions 5 and 6 were identical to Instruction 1, with the exception of the last paragraph, which was modified in Requested Instructions 5 and 6, respectively, as follows:

Fourth, such defective condition as existed when the sixty-ton Bliss Punch Press was sold either directly caused damage to plaintiff or combined with the acts of plaintiff's employer to directly cause damage to plaintiff.

Fourth, such defective condition as existed when the sixty-ton Bliss Punch Press was sold directly caused or directly contributed to cause damage to plaintiff.

Plaintiff contends that the court's refusal to give either requested instruction allowed the jury to find for defendant based on evidence introduced by defendant allegedly to show plaintiff's employer's negligence. It is plaintiff's basic position that he was entitled to an instruction on concurrent negligence as embodied in Requested Instructions 5 and 6.

It is undisputed that the press was in a defective condition at the time of the accident. Investigation subsequent to the accident revealed that the latch rod was connected to the pin which triggered continuous cycling rather than to the pin triggering single cycles. In addition, the limit switch, which was intended to provide a back-up safety system to prevent multiple cycling, was inoperable due to incorrect wiring. Finally, the air cylinder was dry and leaking, apparently as a result of lack of lubrication. Defendant introduced evidence that the press was properly maintained while in defendant's possession, that Steward Steel was responsible for transporting the press and hooking it up in the plant, that the latch rod had been rewelded twice by employees of Steward Steel, that the press had received virtually no maintenance subsequent to its purchase by Steward

Steel, and that, while in possession of Steward Steel, the press had double-cycled one time prior to plaintiff's accident.

It is settled that Missouri law governs the substance of the jury instructions in this case, while the grant or denial of instructions is a procedural matter controlled by federal law. *Hrzenak v. White-Westinghouse Appliance Co.,* 682 F.2d 714, 719 (8th Cir.1982). Plaintiff submits that his requested instructions, based on Missouri Approved Jury Instructions (MAI) 25.04 as modified by MAI 19.01, were consistent with Missouri law. Although a federal judge is not required to use MAI, *id.* at 720, these instructions may be referred to for guidance. Indeed, the court's Instruction 1 in this case was taken directly from MAI 25.04 which governs strict liability for product defects. *See Aronson's Men's Stores, Inc. v. Potter Electric Signal Co., Inc.,* 632 S.W.2d 472, 473 n. 2 (Mo.1982) (en banc); *see also Vanskike v. ACF Industries, Inc.,* 665 F.2d 188, 203 (8th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). However, the extent to which MAI 19.01 may properly be used to modify MAI 25.04 is open to question. According to its language, MAI 19.01 provides an optional modification of instructions concerning a negligence claim against one of two or more joint tortfeasors. Appellant's repeated references to the theory of concurrent negligence, as well as his reliance on MAI 19.01 and cases involving concurrent negligence, *e.g., Joly v. Wippler,* 449 S.W.2d 565 (Mo.1970); *Hower v. Roberts,* 153 F.2d 726 (8th Cir.1946), suggest that plaintiff may have confused the theories of negligence and strict liability, which are viewed as separate and distinct in Missouri. *Aronson's Men's Stores, Inc. v. Potter Electric Signal Co., Inc.,* 632 S.W.2d at 474. This is not to say that a preexisting defect and subsequent negligence may not concur as causative agents in producing an injury or damage, but here the only theory of recovery to be submitted to the jury was strict liability of the defendant on account of a

---

**3.** It appears that Instruction 1 was submitted by plaintiff only after Requested Instructions 5 and 6 had been refused. Plaintiff timely objected to Instruction 1.

defect in the punch press existing at time of sale in 1975.[4] The real question was not whether the defects in the press caused plaintiff's injury; that was virtually conceded. Plaintiff argues that defendant introduced the issue of concurrent negligence through evidence of Steward Steel's failure to maintain and properly repair the press. But this evidence must also be characterized in the context of this case as pertaining largely to defendant's position that the defect or defects discovered at the time of the accident were not in existence when the press was sold, but resulted from Steward Steel's inadequate maintenance and repairs. *See Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 572 (Mo.App.1977) (seller not strictly liable for injury caused by defect created by third person). As correctly reflected in the court's instructions, it was crucial to the claim based on strict liability that plaintiff prove the existence of the defective condition at the time of sale;[5] and, as stated, it was against this claim that the defense was made.

We have recognized that in some contexts the evidence introduced in this case would likely support an instruction on concurrent negligence. However, the sole question before this court is whether the district court committed reversible error by refusing to give either of plaintiff's Requested Instructions 5 and 6. Viewing the instructions as a whole in the context of the record before us, we conclude that the court's instructions were in accordance with the Missouri law on strict liability and that no substantial rights of plaintiff were adversely affected by the court's refusal to give the requested instructions. *See Hallberg v. Brasher*, 679 F.2d 751, 757–58 (8th Cir.1982); *cf. Polk v. Ford Motor Co.*, 529 F.2d 259, 267–68 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976) (wherein an instruction similar to those requested by

appellant was considered questionable but approved because other instructions made it clear that defendant was liable only for injuries directly caused by the defect).

It follows that the judgment of the district court should be, and it is, affirmed.

**4.** As stated earlier, plaintiff voluntarily dismissed his negligence claim against defendant prior to the court's instructions to the jury and Steward Steel's negligence was never alleged.

**5.** The court's Instruction 2 read as follows:

That defendant is liable only for defective and dangerous conditions which were present at the time defendant sold the product and parted with possession of it. Unless you find that the condition complained of was in existence at that time, the plaintiff is not entitled to recover from the defendant.