**Harry WANN, Plaintiff-Appellant,**

**v.**

**Mabel LEDERMAN, et al., Defendants-Respondents.**

**No. 51711.**

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 1, 1987.

Kevin C. Roberts, Hillsboro, for plaintiff-appellant.

Robert J. Foley, Kenneth C. Brostron, St. Louis, for defendants-respondents.

SMITH, Presiding Judge.

Plaintiff appeals from a judgment against him in a case wherein he sought damages for injuries he sustained when he fell off a roof. He brought his action against the owner of the home from which roof he fell and the hospital which originally treated him for his broken pelvis. The trial court directed a verdict in favor of the homeowner and the jury returned a verdict in favor of the hospital. We affirm.

Mrs. Lederman was the owner of the home. On the night of the accident the roof of her home was in the process of repair. Plaintiff's son was one of several family members and friends making the repairs. On some portions of the roof the old shingles had been removed leaving bare wood. Some portions of the roof, predominately near the bottom of the roof had been reshingled. It was raining on the day the accident occurred. Mrs. Lederman called her granddaughter-in-law, plaintiff's daughter, and told her the roof was leaking and damaging the interior of the house. The granddaughter and another woman went to the house. While there the granddaughter called plaintiff to request his help. It was agreed that the granddaughter would purchase plastic to cover the roof. Plaintiff went to the house to assist in covering the roof. There was a dispute

in the evidence whether plaintiff and defendant Lederman talked while plaintiff was on the premises. The evidence most favorable to plaintiff was that Mrs. Lederman talked to plaintiff but gave him no warning about going on the roof. Plaintiff was aware that the roof was in the process of repair at the time and that it had been raining. Plaintiff and another man climbed to the roof to spread the plastic. It was dark and plaintiff carried a two-cell flashlight. There was no other illumination.

While spreading the plastic sheeting plaintiff slid, lost his balance and fell off the roof, breaking his pelvis among other injuries. Plaintiff believed he slipped on loose granules of sand from the shingles. Such granules were on his clothing after the fall. His son subsequently went onto the roof to complete the coverage with the plastic and noticed sand granules in the crevices of wood and on the leading edge of the shingling. He also slipped on the granules but did not fall. The granddaughter testified about comments of Mrs. Lederman made sometime during the roof repair prior to plaintiff's fall:

"She had made a remark a few times that she would be glad when it was over-with because it was making a mess in her yard and when it would rain like the granules off the roofing would come down on the sidewalks."

While being treated at the hospital plaintiff testified that a nurse raised the back support on a table on which plaintiff was lying. When plaintiff leaned back against the support it collapsed and plaintiff sustained several hours of increased pain as a result. This was the basis of plaintiff's action against the hospital.

Plaintiff's points on appeal all relate to his contention that the court erred in directing a verdict against him as to Mrs. Lederman. Missouri courts have adopted as the rules for determining liability of a landowner to an invitee, Sections 343 and 343A(1) Restatement of the Law of Torts, Second (1965). *Wright v. Interco, Incorporated,* 567 S.W.2d 149 (Mo.App.1978) [1]. Such a landowner is liable for physical harm caused to an invitee by a condition of the land, if, but only if, he knows, actually or constructively, the condition and should

realize that it involves an unreasonable risk of harm to such invitee and should expect the invitee will not discover or realize the danger or will fail to discover it or will fail to protect themselves against it, and, fails to exercise reasonable care to protect the invitee from the danger. *Id.*

There was no showing that Mrs. Lederman was aware of a dangerous condition of the premises unknown to plaintiff. She knew the roof was under repair; so did plaintiff. There was no evidence that at age 86 she had climbed on the roof to inspect it. She knew it had been raining and the roof was wet; so did plaintiff. She had observed granules on her sidewalk after the rain. Her statement indicates she knew the source of those granules were from the roofing but no evidence she knew or should have known they constituted any unusual condition for a roof particularly one under repair. In fact there was no evidence that such granules were unusual or unexpected. Evidence submitted by plaintiff indicated that such granules were a normal part of roof shingles. In short both plaintiff and Mrs. Lederman knew the roof was under repair and there is no evidence Mrs. Lederman was aware or should have been aware of any dangerous condition unusual to her roof of which plaintiff was not equally aware. Walking on a roof is by its nature dangerous. Plaintiff was equally aware of that danger. Plaintiff was required to establish an unreasonable risk of harm known, actually or constructively, to Mrs. Lederman, beyond that inherent in walking on a roof under construction. *Cross v. Lindenwood Colleges*, 677 S.W.2d 423 (Mo.App.1984) [1]. That he did not do. The trial court properly sustained Lederman's motion for directed verdict. Inasmuch as we have concluded the motion for directed verdict was properly granted we need not discuss plaintiff's remaining points premised on the same alleged error.

Judgment affirmed.

DOWD and REINHARD, JJ., concur.